IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAMMY BYNUM INTEREST, INC. | § § § § | |
| *Plaintiff / Counter-Defendant*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:16–CV–1005 |
| RYAN COMPANIES US, INC. | § § § | |
| *Defendant / Counter-Plaintiff* | § | |

### RYAN COMPANIES US, INC.'S AMENDED ANSWER AND ORIGINAL COUNTERCLAIM

Defendant / Counter-Plaintiff, RYAN COMPANIES US, INC. ("Ryan"), files this amended answer and original counterclaim in response to the original petition filed by Plaintiff / Counter-Defendant, TAMMY BYNUM INTEREST, INC. ("TBI"). In support, Ryan respectfully submits the following:

### I. BACKGROUND & INTRODUCTION

1. Ryan is a national builder, developer, designer, and real estate manager based in Minneapolis, MN. In 2014, Ryan was hired by United Parcel Service ("UPS") to build an expansion of one of its facilities located a 9641 Pozos Lane, Conroe, TX 77303 (the "Project").

2. Ryan hired TBI as one of its subcontractors for the Project. Indeed, on or about July 11, 2014, Ryan and TBI entered into a subcontract agreement (the "Subcontract") whereby TBI agreed to perform various concrete and paving work on the Project. The Subcontract was amended by change order on a multiple occasions. Those change orders not only increased the Subcontract's value but likewise increased the scope of work TBI was responsible for performing on the Project.

3. In Change Order No. 1 dated August 19, 2014, TBI agreed to provide all material, labor, and equipment necessary to complete the following scope of work (among other additional scopes):

> Asphalt paving at employee parking lot per plans, specifications, and Terracon geotechnical report dated March 31, 2014. Includes, but is not necessarily limited to: 51,380 SF of asphalt paving; 1,124 LF of concrete curb and gutter; 2,500 SF of concrete downfall drainage structure including associated earthwork; layout and stripe 130 spaces with two coats of chlorinated rubber traffic marking paint; layout and stripe six handicap emblems, crosswalks, and hatched areas; furnish and install six typical 12"x18" handicap signs on typical 2-3/8" galvanized post.

In exchange for TBI performing this additional scope of work, Ryan agreed to pay TBI an additional $120,432.00. TBI proceeded with this asphalt paving work in the latter part of 2014.

4. Not long after completion by TBI, the parking lot's asphaltic concrete paving began to show signs of problems. Some of the problems with the parking lot's asphalt paving that were observed included: raveling (in various stages of severity); ponding of water in multiple locations; and a lack of uniformity which appeared to be causing drainage problems.

5. TBI was made aware of these problems with the parking lot's asphalt paving. Indeed, in mid-January 2015, representatives of Ryan, TBI, and others met at the Project site to review the problematic asphalt paving. During that meeting it was agreed TBI's asphalt paving work was unacceptable.

6. Subsequently, Ryan requested an engineering consultant evaluate the parking lot's asphalt paving. In late February 2015, professional engineers with Terracon Consultants, Inc. investigated the asphalt paving. The Terracon engineers observed the following, among other things:

- The existing asphalt surface course appeared to be experiencing moderate to extreme raveling.

- The parking lot had significant water ponding occurring.

- Trailers that were parked on the lot surface were causing point load distresses.

- The existing asphalt surface course did not appear to be uniform or graded such as to provide for adequate drainage.

- Three cores were taken, which showed the stabilized subgrade to range in depth from 4.5" to 6", the base material to range in depth from 6.5" to 10.0", and the asphaltic concrete surface course to range in depth from 1.5" to 2.5"

Based on their investigation, the Terracon engineers recommended the following remedial measures:

- Removal of the existing asphaltic concrete surface, regrade and re-compact base material to provide for proper drainage.

- Overlay base material with a minimum of 2.0" of hot mix asphalt concrete meeting the requirements outlined in the Project's specifications.

- Compact the new surface course to a minimum of 92% of maximum theoretical density.

7.  Not only was TBI actually aware of these problems with the parking lot's asphalt paving, in late March 2015, Ryan provided formal written notice to TBI of the fact that its asphalt paving work was defective and not in conformance with the Project's specifications. Ryan demanded TBI correct its work at no cost to Ryan as required by the Subcontract.

8.  Despite acknowledging its parking lot asphalt paving work was unacceptable and despite Ryan formally demanding TBI resolve the problem, TBI failed and refused to correct its defective and out-of-spec asphalt paving work.

9.  Because of TBI's failure and refusal to correct its deficient work, Ryan was forced to hire another subcontractor to execute the remedial measures

recommended by Ryan's engineering consultant. In particular, Ryan hired South Houston Asphalt & Concrete, LLC ("South Houston") to demolish and replace the Project's defective asphalt parking lot.

10.     Ryan properly back-charged the amounts it paid to South Houston against the amounts owed to TBI under the Subcontract. All other amounts owed under the Subcontract were either paid directly to TBI or jointly to TBI and its subcontractors.

11.     Despite its colossal failures with regard to the parking lot asphalt work and its failure and refusal to comply with the Subcontract, TBI decided to initiate this lawsuit against Ryan. It is against this background that Ryan files this amended answer to vigorously defend against TBI's claims and this original counterclaim to seek recovery of damages owed to Ryan because of TBI's breaches of the Subcontract.

## II. ANSWER

In response to *Plaintiff's Original Petition* filed by TBI (the "Petition"), Ryan answers as follows:

12.     The procedural assertion in Paragraph No. 1 of the Petition does not call for an admission or denial.

13. With respect to the allegations in Paragraph No. 2 of the Petition, Ryan admits Plaintiff's name is Tammy Bynum Interest, Inc. Ryan denies Tammy Bynum Interest, Inc. is in good standing as a Texas corporation.

14. With respect to the allegations in Paragraph No. 3 of the Petition, Ryan admits it is a corporation doing business in Texas. Because Ryan has appeared and answered, the balance of the allegations in Paragraph No. 3 do not call for an admission or a denial.

15. With respect to the allegations in Paragraph No. 4 of the Petition, Ryan admits that this Court has jurisdiction over the controversies at issue in this lawsuit.

16. With respect to the allegations in Paragraph No. 5 of the Petition, Ryan admits that the Petition claims damages within the stated range. Ryan denies TBI is entitled to recovery of any damages.

17. With respect to the allegations in Paragraph No. 6 of the Petition, Ryan admits this Court has jurisdiction over the parties to this lawsuit. Ryan denies it is a Texas resident.

18. With respect to the allegations in Paragraph No. 7 of the Petition, Ryan denies venue is proper in the state courts in Montgomery County, TX.

19. With respect to the allegations in Paragraph No. 8 of the Petition, Ryan admits the parties entered into a written contract as stated. Ryan denies the document

attached as Exhibit A to the Petition is a true, correct, and complete copy of the parties' contract. Ryan admits the final sentence in Paragraph No. 8.

20. With respect to the allegations in Paragraph No. 9 of the Petition, Ryan admits TBI provided some concrete work for the Project. Ryan denies the balance of the allegations in Paragraph No. 9.

21. Ryan denies the allegations in Paragraph No. 10 of the Petition.

22. With respect to the allegations in Paragraph No. 11 of the Petition, Ryan denies it made any promises to TBI outside of those contained in its written Subcontract with TBI. Ryan admits it paid invoices as required by the Subcontract. Ryan denies the balance of the allegations in Paragraph No. 11.

23. With respect to the allegations in Paragraph No. 12 of the Petition, TBI's allegations are unclear. In that regard, Ryan denies the allegations in Paragraph No. 12 of the Petition.

24. With respect to the allegations in Paragraph No. 13 of the Petition, Ryan admits it hired engineering consultants to review the work performed by TBI on the Project. Ryan denies that the engineering consultants confirmed TBI performed its obligations under the Subcontract. Ryan denies the document attached as Exhibit B to the Petition has the meaning and significance suggested by TBI.

25. The statements in Paragraph No. 14 of the Petition to not call for an admission or denial.

26. Ryan denies the allegations in Paragraph No. 15 of the Petition.

27. Ryan denies the allegations in Paragraph No. 16 of the Petition.

28. Ryan denies the allegations in Paragraph No. 17 of the Petition.

29. Ryan denies the allegations in Paragraph No. 18 of the Petition.

30. The statements in Paragraph No. 19 of the Petition to not call for an admission or denial.

31. Ryan denies the allegations in Paragraph No. 20 of the Petition.

32. With respect to the allegations in Paragraph No. 21 of the Petition, Ryan admits TBI's counsel issued a demand for payment on or about March 13, 2015. Ryan further admits that Exhibit D to the Petition appears to be a true and correct copy of TBI's counsel's demand for payment. Ryan denies the balance of the allegations in Paragraph No. 21.

33. The statements in Paragraph No. 22 of the Petition to not call for an admission or denial.

34. Ryan denies the allegations in Paragraph No. 23 of the Petition.

35. Ryan denies the allegations in Paragraph No. 24 of the Petition.

36. Ryan denies the allegations in Paragraph No. 25 of the Petition.

37. The statements in Paragraph No. 26 of the Petition to not call for an admission or denial.

38. The statements following the heading "XI. PRAYER" do not call for an admission or denial. To the extent an admission or denial is required, however, Ryan denies the allegations contained in this part of the Petition.

### III. AFFIRMATIVE DEFENSES

39. TBI's failure and refusal to correct its damaged, defective, and out-of-spec asphalt paving work on the Project caused Ryan to incur: (1) significant costs attendant to correcting the asphalt paving problems; and (2) other Project-related costs and expenses, including costs and expenses for delays, overtime, acceleration, and attorneys' fees. Pursuant to the terms of the Subcontract, TBI is liable to Ryan for these costs and expenses. Accordingly, Ryan is entitled to offsets and credits against any amounts TBI claims it is owed.

40. TBI's failure and refusal to correct its damaged, defective, and out-of-spec asphalt paving work on the Project constitutes an unexcused material breach of the Subcontract. TBI's material breach discharges Ryan from any further obligation to TBI and precludes TBI from pursuing claims against Ryan for any alleged breach of the Subcontract.

## IV. Original Counterclaim

41.     Ryan files this counterclaim against TBI. In support, Ryan respectfully submits the following:

### Jurisdiction and Venue

42.     Jurisdiction over the subject matter of Ryan's counterclaim is conferred by Federal Rule of Civil Procedure 13 and 28 U.S.C. § 1367.

43.     This Court is a proper venue for Ryan's counterclaim. *See* 28 U.S.C. § 1391.

### Parties

44.     Counter-Plaintiff is Ryan. Ryan has appeared in this case.

45.     Counter-Defendant is TBI. TBI has appeared in this case and may be served with this counterclaim through its counsel of record.

### Facts

46.     Ryan incorporates by reference all prior factual allegations.

47.     Ryan's counterclaim against TBI arises from TBI's acts and omissions related to the asphalt paving work TBI was obligated to perform on the Project. In sum, TBI delivered to Ryan an asphalt-paved parking lot that did not meet the requirements of applicable Project specifications, was damaged, and was ultimately

defective. Ryan demanded TBI correct (at no cost to Ryan) its damaged, defective, and out-of-spec asphalt paving work.

48. TBI failed and refused to perform the required corrections. This failure and refusal by TBI caused Ryan to incur: (1) significant costs attendant to correcting the problems with the Project's asphalt paving; and (2) other Project-related costs and expenses, including costs and expenses for delays, overtime, acceleration, and attorneys' fees.

### Count I – Breach of Contract

49. All prior paragraphs are incorporated by reference.

50. Ryan entered into the Subcontract with TBI, and Ryan has performed, or in the alternative substantially performed, all of the obligations it was required to perform under the Subcontract. TBI has materially breached the Subcontract by, among other things: (1) failing to perform its work on the Project in accordance with the standards outlined in the Subcontract; (2) failing and refusing correct at no cost to Ryan all damaged, defective, and out-of-spec work TBI performed on the Project; and (3) failing and refusing to indemnify and hold Ryan harmless from the damages, injuries, costs, and expenses incurred by Ryan attributable to the damaged, defective, and out-of-spec work TBI performed on the Project.

51. As a result of TBI's breaches of the Subcontract, Ryan has incurred damages within the jurisdictional limits of the Court.

### Count II – Breach of Warranty

52. All prior paragraphs are incorporated by reference.

53. TBI expressly warranted that its work on the Project would be performed in accordance with certain standards as set out in the Subcontract and that TBI would correct any defects in the material or workmanship of the work it provided to the Project. TBI has breached its warranties by, among other things: (1) failing to perform its work on the Project in accordance with the standards outlined in the Subcontract; and (2) failing to correct its non-conforming work.

54. Further, TBI impliedly warranted that its work on the Project would be performed in a good and workmanlike manner. TBI has breached this implied warranty by failing to perform its work in a good and workmanlike manner.

55. As a result of TBI's breaches of these warranties, Ryan has incurred damages within the jurisdictional limits of the Court.

### Count III – Negligence

56. All prior paragraphs are incorporated by reference.

57. TBI owed a duty to Ryan to perform its work on the Project in a manner which was free from defects, of good quality, in a good and workmanlike manner,

and consistent with all applicable standards of care. TBI has violated the duty it owed to Ryan in at least the following respects: (1) TBI failed to use ordinary care in the performance of its work on the Project; (2) TBI performed work on the Project that was defective and of poor quality; (3) TBI did not perform its work on the Project in a good and workmanlike manner; (4) TBI failed to use ordinary care in selecting laborers and other subcontractors to perform its work on the Project; (5) TBI failed to use ordinary care in overseeing the quality of the work it performed on the Project; and (6) TBI failed to use ordinary care to supervise the work it performed on the Project.

58. As a direct and proximate result of TBI's negligence, Ryan has incurred damages within the jurisdictional limits of the Court.

## V. ATTORNEYS' FEES AND INTEREST

59. As a result of the actions and / or omissions of TBI as described herein, Ryan has been required to retain legal counsel to defend against TBI's claims and prosecute its counterclaim. Ryan has agreed to pay a reasonable fee for the legal services performed.

60. Ryan is entitled to recover its reasonable attorneys' fees for all legal services incurred in this lawsuit pursuant the terms of the Contract and pursuant to

Texas law, including but not limited to Chapter 38 of the Texas Civil Practice & Remedies Code.

61. Ryan is also entitled to recover pre-judgment and post-judgment interest at the highest legal rate pursuant to Texas law.

## VI. CONDITIONS SATISFIED

62. All conditions precedent to Ryan's claims against TBI have been performed, completed, waived, or excused. *See* FED. R. CIV. P. 9 (c).

## VII. ALTERNATIVE PLEADING

63. Ryan's claims and defenses as plead herein, where necessary, are in the alternative. *See* FED. R. CIV. P. 8 (d).

## VIII. PRAYER

Ryan respectfully requests, following such hearing and trial as may be required, the Court enter judgment against TBI and in favor of Ryan as follows:

a) that TBI take nothing by its claims;

b) that TBI's claims are dismissed with prejudice;

c) that Ryan be awarded all of its damages as pled above;

d) that Ryan be awarded its reasonable and necessary attorneys' fees and expenses in the trial court and all appellate courts;

e) that Ryan be awarded its costs;

 f)  that Ryan be awarded pre-judgment and post-judgment interest at the highest legal rate; and

 g)  that Ryan be awarded all other relief to which it may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

       Submitted respectfully,

       ANDREWS MYERS, P.C.

       3900 Essex Lane, Suite 800
       Houston, TX 77027
       Tel: (713) 850-4200
       Fax: (713) 850-4211

       By: */s/ William B. Davis*
         William B. Davis (attorney-in-charge)
         TBN: 24067569
         Fed. Bar No.: 1010783
         wdavis@andrewsmyers.com

       ATTORNEYS FOR DEFENDANT / COUNTER-PLAINTIFF, RYAN COMPANIES US, INC.

OF COUNSEL:

Timothy C. Ross
TBN: 24056231
Fed. Bar No.: 704790
ANDREWS MYERS, P.C.
3900 Essex Lane, Suite 800
Houston, TX 77027
Tel: (713) 850-4200
Fax: (713) 850-4211
tross@andrewsmyers.com

Ryan Companies US, Inc.'s Amended
Answer and Original Counterclaim – Page 15 of 16

3213.3

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing *Ryan Companies US, Inc.'s Amended Answer and Original Counterclaim* has been served on all known counsel of record in accordance with Rule 5, Federal Rules of Civil Procedure. Dated: September 30, 2016.

    William E. Harrison
    HARRISON & DIETRICH, PLLC
    215 Simonton
    Conroe, TX 77301
    Tel: (936) 828-3898
    Fax: (936) 828-3965
    conroeattorney@yahoo.com

    *Attorney for Plaintiff / Counter-Defendant, Tammy Bynum Interest, Inc.*

                                       */s/ William B. Davis*
                                          William B. Davis

4850-9098-2457, v. 1